Randall STEWART, Anthony Marinaccio, Patrick McMahon, Noreen Kiely, Robert Boeckle, Edward Zupan, John Mazur and Oral Christie, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

NYNEX CORPORATION, et al., Defendants.

No. 96 Civ. 7526(AKH).

United States District Court, S.D. New York.

Nov. 23, 1999.

Order Denying Reconsideration Dec. 20, 1999.

---

William D. Hummel, Catherine A. Helwig, and Eugene Schneur, Snow Becker Krauss P.C., Eric B. Chaikin and Alex Stotland, Chaikin & Chaikin, for plaintiffs.

Brian C. Anderson, Karen M. Wahle, Martha Dye, Gregory Y. Porter, O'Melveny & Myers LLP, Barry W. Peters, Bell Atlantic Network Services Inc., for defendants.

### MEMORANDUM AND ORDER

HELLERSTEIN, District Judge.

This putative class action seeks redress for alleged violations of the Portability Act (Section 559 of the Deficit Reduction Act of 1974, Public Law 98–369) and ERISA[1]

caused when NYNEX Corporation ("NYNEX") transferred employees from its Science and Technology Division into a newly incorporated subsidiary, NYNEX Science & Technology, Inc. ("S & T, Inc."). The plaintiffs are eight individuals, Randall Stewart, Anthony Marinaccio, Patrick McMahon, Noreen Kiely, Robert Boeckle, Edward Zupan, John Mazur, and Oral Christie (collectively, the "plaintiffs"), who allege that NYNEX wrongfully caused them to lose accrued pension and seniority credits by the transfer; and by failing to inform them of their lost portability.

Defendants now move this court for summary judgment dismissing the Complaint. For the reasons stated herein, I grant defendants' motion in part and deny it in part.

### STATEMENT OF FACTS

1. *Background*

Prior to the breakup of AT & T in January 1984, employees could transfer employment among the various Bell Companies that made up the AT & T family and retain, or "port," their accrued pension and seniority rights. Thus, someone who had worked for the New York Telephone Company for seven years, could move to Madison, Wisconsin, become employed by Wisconsin Bell, and port his employment seniority and accrued service and pension benefits, rather than be considered a "new hire."

Upon the breakup of AT & T, and the creation of seven independent regional Bell Operating Companies ("RBOCs"),[2] including NYNEX, portability was to be phased out and employees were allowed to transfer their accrued service credits between

---

1. Employees' Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

2. The other RBOCs included: Bell Atlantic Corporation, Bellsouth Corporation, American Information Technologies Corporation (a/k/a AMERITECH), Southwestern Bell Corporation, U.S. West, Inc. and Pacific Telesis Group. AT & T did not have to divest itself of two telephone companies in which it maintained minority interests, Cincinnati Bell, Inc. and The Southern New England Telephone Company.

former AT & T affiliates for one year only, until December 31, 1984. (N.Y.NEX 56.1, at ¶ 2). United States District Judge Harold H. Greene, the judge presiding over the AT & T case, rejected a request by AT & T's unions that portability continue, holding that portability was inconsistent with independence of the RBOCs. *United States v. Western Elec. Co.*, 569 F.Supp. 1057, 1094 (D.D.C.), *aff'd sub nom., California v. United States*, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983). Thus, the Divestiture Interchange Agreement ("DIA") among the RBOCs provided continuation of portability for only one year, in order to facilitate transfers of employees among the newly reorganized and now independent companies. *Id.* at 1091–94, n. 158, 104 S.Ct. 542.

The AT & T employees carried their fight for greater portability to Congress. On July 17, 1984, Congress enacted Section 559 of the Deficit Reduction Act of 1984 (the "Portability Act"), which extended portability rights to employees of the RBOCs who (A) were employed in a non-supervisory position, or (B) received an annual base pay of not more than $50,000 as adjusted for changes in the consumer price index. *See,* Portability Act § 559(c)(3). The entities covered by the Portability Act were:

a. any carrier divested as a result of the modified final judgment;

b. the corporation owning such carrier before divestiture;

c. any other communications common carrier owned, in whole or in part, by such corporation on December 31, 1983; or

d. any Interchange Company (as defined in the divestiture interchange agreement) excluding any subsidiary of such company other than any such subsidiary—

i. which was established as of December 31, 1983; and

ii. which participates in a defined benefit pension plan maintained by such Interchange Company.

Portability Act, § 559(c)(5). NYNEX and the other RBOCs entered into Mandatory Portability Agreements to implement the Portability Act. (N.Y.NEX 56.1, at ¶ 4).

2. *The Creation of Science & Technology Division and the Incorporation of S & T, Inc.*

Upon divestiture, the seven RBOCs formed Bell Communications Research, Inc., or "Bellcore," an entity equally owned by, and intended to benefit, each of the RBOCs. Bellcore was to be "devoted to telephone company-related scientific research and development." (N.Y.NEX 56.1, at ¶ 5).

In 1986, NYNEX determined to perform its own R & D activities, and formed a division of NYNEX to do that, the NYNEX Science & Technology Division (the "S & T Division"). In June 1991, NYNEX obtained a charter for a corporation, NYNEX Science & Technology, Inc. ("S & T, Inc.") and, on September 1, 1991, made S & T, Inc. the employer of NYNEX's S & T employees. There is no evidence that the employees were advised of the technical change in their employer's name or legal status, or advised of any consequences to them of such change. NYNEX claims it incorporated S & T in order better to implement a directive of the New York Public Service Commission ("NYPSC") to segregate expenses and profits between affiliated, and non-affiliated, telephone companies; but the record is silent as to how accounting classifications differ between wholly-owned subsidiaries and divisions. (N.Y.NEX 56.1, at ¶ 9).

NYNEX did not designate S & T, Inc. a portability company. NYNEX claims that it was not compelled to do so since neither "[S & T, Inc.] nor [the S & T Division] had been established as of December 31, 1983." (N.Y.NEX 56.1, at ¶¶ 3, 6, 16). However, NYNEX continued to recognize pension and seniority credits for employees of S &

T, Inc. who transferred within the NYNEX family of companies that were portability companies. (*Id.* at ¶ 17).

NYNEX maintained a separate corporate identity for S & T, Inc., with its own employees, officers and board of directors. (N.Y.NEX 56.1, at ¶ 13). S & T, Inc. was the legal owner of its building, maintained separate bank accounts and books and records, had its own budget, paid dividends to NYNEX as the owner of all its stock, and paid taxes separately. (*Id.*).

### 3. The Plaintiffs

The eight named plaintiffs are all former employees of S & T, Inc. A brief employment history for each plaintiff follows.

#### a. Oral Christie

Oral Christie worked for S & T Division and, following its incorporation, for S & T, Inc., reasonably believing that his portability continued. (Plaintiffs' 56.1, at pp. 25–25b). In July 1995, Christie left S & T, Inc. and was hired by Bell South Science & Technology, Inc. ("Bell South"). (*Id.*). Christie then learned that his seniority benefits did not "port". He did not get full vacation time, had to wait six months for medical coverage and could not participate immediately in the Bell South Savings Plan, nor receive contributions from Bell South commensurate to his employment history. (Oral Arg., 5/4/99, at p. 4). In January 1998, Christie left Bell South and obtained employment at a non-portability company. (*Id.*).

#### b. Randall Stewart

Randall Stewart had been employed by Bell portability companies from 1979 to 1988. (Am.Compl. ¶ 96, NYNEX 56.1, at ¶ 18). He then become employed by a non-Bell, non-portability company, Fujitsu Network Switching (N.Y.NEX 56.1, at ¶ 18). In March 1993, he joined S & T. He claims that he was advised, upon being hired, that his 1980–88 service would be counted as accrued net credited service (Plaintiffs' 56.1, at pp. 18–18b), and that he

believed that he would be eligible to participate immediately in the NYNEX Management Pension Plan. (*Id.*) However, Stewart was made to wait five years before being allowed to participate in the Plan, and did not receive the benefits accruing from his prior service. Stewart left S & T, Inc. in February 1997, and obtained a position with a non-Bell company. (*Id.*). Stewart complains that, as a former AT & T employee, he had a "reasonable expectation of renewing his participation in those NYNEX Plans" and, because S & T, Inc. was not designated a portability company, that right of future participation has been lost to him (Am.Compl. ¶ 127).

#### c. John Mazur

John Mazur was employed by the S & T Division and, following its incorporation, with S & T, Inc. (N.Y.NEX 56.1, at ¶ 24), and participated throughout in the NYNEX Management Pension Plan. (*Id.*). Mazur's employment with S & T, Inc. terminated in 1993, and he elected on termination to cash out his pension by taking a lump-sum distribution of $18,-745.46. (*Id.*). Soon after, Mazur accepted a position with Cincinnati Bell Information Systems, a portability company. (*Id.*).

Mazur contends that Cincinnati Bell wrongfully refused to accept his S & T, Inc. service for establishing his seniority at Cincinnati Bell on the ground that S & T, Inc. had not been designated a portability company. (Plaintiffs' 56.1, at p. 24). Thus, Cincinnati Bell, as part of a downsizing, treated Mazur as a new hire, rather than an employee with over eight years seniority, and terminated his employment. Mazur is currently employed by a non-Bell company. (*Id.*).

#### d. Noreen Kiely

Noreen Kiely, after employment at NYNEX, joined S & T, Inc. in 1994. (N.Y.NEX 56.1, at ¶ 21). In June 1998, Kiely was transferred to Telesector Resources Group ("TRG"), a wholly-owned

subsidiary of NYNEX and a designated portability company. Throughout, Kiely has participated in the NYNEX Management Pension Plan. (*Id.*).

### e. *Patrick McMahon*

Patrick McMahon was employed by TRG, then in 1992 by S & T Division (and later transferred to S & T, Inc.), and in June 1998 transferred back to TRG. (*Id.* at ¶ 20). Like Kiely, McMahon has participated throughout in the NYNEX Management Pension Plan. (*Id.*).

### f. *Anthony Marinaccio*

Anthony Marinaccio was employed by NYNEX since 1970 (Am.Compl. ¶ 128), then, as of September, 1994, by S & T, Inc. and, in November 1998, by TRG. (*Id.*). Marinaccio, throughout, participated in the NYNEX Management Pension Plan. (*Id.*).

### g. *Robert Boeckle*

Robert Boeckle was employed by the S & T Division, then when S & T, Inc. was incorporated in 1991, by S & T, Inc. and, in June 1998, by TRG. (N.Y.NEX 56.1, at ¶ 22). (*Id.*). During his tenure at S & T, Inc., Boeckle received full pension and seniority credits accruing from his three employments. (*Id.*).

### h. *Edward Zupan*

Edward Zupan worked for NYNEX, then between 1992 and 1998, for S & T, Inc., and then for TRG. (N.Y.NEX 56.1, at ¶ 23). Zupan, also, received full pension and seniority benefits from his three employments. (*Id.*).

Thus, five of the eight plaintiffs—Boeckle, Marinaccio, McMahon, Kiely and Zupan—have enjoyed full pension and seniority benefits, even though NYNEX did not designate S & T, Inc. as a portability company. Because S & T, Inc. is part of the NYNEX family of companies, Boeckle, Marinaccio, McMahon, Kiely and Zupan's service time with S & T, Inc. was credited by TRG, the NYNEX-affiliated company to which they transferred, just the same as if S & T, Inc. had been a portability company. (Stip'n, Nov. 13, 1998; *see also,* Oral Arg. Tr. at p. 12–13).[3]

### 4. *Activation of S & T, Inc. Without Disclosure*

Plaintiffs contend that they were not given notice that their transfer from S & T Division to S & T, Inc. would materially and adversely affect the terms and conditions of their employment. (Plaintiffs 56.1, at pp. 18–18c, 19–19a, 20–20a, 21–21a, 22–22d, 23–23b, 24c-i, 25–25a). Plaintiffs claim that they would not have accepted employment at S & T, Inc. if they had been told that they would thereby lose portability. The NYNEX Defendants, although they dispute plaintiffs' claim, are not able to cite to any credible evidence that S & T employees were advised that the incorporation of the S & T Division by NYNEX would affect long-held rights to portability. A Summary Plan Description, *It's Your Call,* distributed in May 1991 by the NYNEX Plan Administrator, discusses "portability entitlements" (N.Y.NEX 56.1, at ¶ 12), but says nothing about losing rights because of a change in the technical personality of their employer, from divisional to corporate form. The Summary Plan Description contained a list of portability companies covered by the Portability Act, including NYNEX and TRG, and did not list S & T, Inc. (*Id.* at ¶ 30). (S & T, Inc. had not yet been incorporated, and did not begin operating until four months later, in September 1991.) Updates and subsequent descriptions of the benefits plan did not list S & T, Inc. as a portability company.

I find that such advice as defendants contend they gave was absent or inade-

---

**3.** During oral argument, counsel for the NYNEX Defendants represented that these five employees have full portability "as if they never worked at Science & Technology Inc." (*Id.*).

quate, that no reasonable employee could have expected that a radical change in the terms and conditions of employment would be made without notice being given to them and that the NYNEX employees relied to their prejudice.

### 5. *Plaintiffs' Lawsuit*

On October 3, 1996, plaintiffs filed suit. Plaintiffs' First Claim for Relief alleges that NYNEX's designation of S & T, Inc. as a non-portability company violates the provisions of the Portability Act, and that such designation improperly deprived plaintiffs of employment service credits, and wages, benefits and other remuneration. (Am. Comp., at ¶¶ 265–273).

Plaintiffs' Second Claim for Relief alleges that defendants made material misrepresentations and omissions with respect to S & T, Inc.'s designation as a non-portability company, and seeks enforcement of the Portability Act "under the Common Law Doctrine of Misrepresentation." (Am. Comp., at ¶¶ 274–284). Plaintiffs' Third Claim for Relief alleges that defendants are equitably estopped because of their representations from depriving plaintiffs of their portability rights. (Am. Comp., at ¶¶ 285–296). Plaintiffs' Fourth Claim for Relief pleads that defendants were unjustly enriched by their misrepresentations and must disgorge their enrichments. (Am. Comp., at ¶¶ 297–99). Plaintiffs' Fifth Claim for Relief, seeking punitive damages for defendants' "wanton and willful misconduct," was withdrawn during oral argument. (Am. Comp., at ¶¶ 300–303).

Plaintiffs allege six claims for relief under ERISA. Plaintiffs' Sixth Claim for Relief alleges that the defendants who were trustees and fiduciaries of the several health and pension plans failed to make independent determinations concerning the rights of the beneficiaries for whom they were required to act, regarding NYNEX's decision not to designate S & T, Inc. as portable, and thus violated their fiduciary obligations. Plaintiffs seek re-

covery for their damage and restoration of full benefits. (Am. Comp., at ¶¶ 304–311).

Plaintiffs' Seventh Claim for Relief claims that defendants failed to provide accurate information to Plan participants that their transfers to S & T, Inc. would adversely affect their pension credits and welfare benefits (Am.Compl. ¶ 316), even though they knew that NYNEX' decision not to designate S & T, Inc. a portability company would have such adverse effects (*id.* ¶ 317), and that defendants are therefore liable to plaintiffs in damages and equitably to restore plaintiffs to the position they should have had. (*Id.* ¶¶ 323–25).

Plaintiffs' Eighth Claim for Relief alleges that defendants breached their obligations to provide notice to participants of modifications of coverage affecting their rights and benefits (*id.* ¶ 329), entitling plaintiffs to the legal and equitable remedies described above (*Id.* ¶¶ 333–35).

Plaintiffs' Ninth Claim charges defendants with discrimination among NYNEX employees covered by the Plans, singling out those transferred to S & T, Inc. for adverse treatment, and seeks the same legal and equitable relief. (*Id.* ¶¶ 337–44). Plaintiffs' Tenth Claim is essentially the same as the prior ERISA claims.

Plaintiffs' Eleventh Claim for Relief seeks attorneys' fees pursuant to Section 502(g)(1) of ERISA, (Am. Comp., at ¶¶ 349–351), and is not affected by defendants' motion.

Defendants now move for summary judgment to dismiss the lawsuit for failing to state a legally sufficient claim under the Portability Act and ERISA. Oral Argument was held on May 4, 1999. I suspended decision with the parties' consent to permit them to discuss settlement, but their talks were unsuccessful. For the reasons stated on the record during Oral Argument and in this opinion, I grant defendants' motion in part and deny it in part.

## DISCUSSION

### A. The Law Concerning Summary Judgment

The standard for granting summary judgment is well established. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("*Celotex*"). Summary judgment may be granted if the pleadings and written discovery, together with the affidavits, show that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) (1999); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994) ("*Gallo*"). The trial court's task at the summary judgment motion stage is to discern if there are genuine issues of material fact to be tried, not to decide them; its duty is "issue-finding," it does not extend to "issue-resolution." *Gallo*, 22 F.3d at 1224.

In determining if summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("*Matsushita*"). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (1999). The nonmoving party must raise more than just a "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202. If there is an absence of sufficient proof as to any essential element on which the opponent of summary judgment has the burden of proof, any factual dispute with respect to other elements becomes immaterial and cannot defeat the motion. *Gottlieb v. Co. of Orange*, 84 F.3d 511, 519 (2d Cir.1996) ("*Gottlieb*").

## I. MOOTNESS AND JUSTICIABILITY

Defendants argue that the claims of Boeckle, Kiely, Marinaccio, McMahon and Zupan are moot because NYNEX, in transferring employees to TRG, a subsidiary of NYNEX that is a portability company, continued to treat their years of service with S & T, Inc. as portable. Hence, they suffered no damage. Although it is possibly true that such employees could lose portability if they were, in the future, to terminate employment at a portability company and join a non-portability company, that possibility is too speculative and too indefinite to consider as a case or controversy. Under the doctrine of mootness, discussed below, I order the claims of these five plaintiffs dismissed.

The mootness doctrine is derived from the constitutional requirement that federal courts may decide only cases or controversies. U.S. Const. art. III, § 2; *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964). A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir.1983). Although a case may not be moot if the underlying dispute between the two parties is "capable of repetition, yet evading review," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976), the speculative possibility of future harm is insufficient to qualify under that standard. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In order to be a proper plaintiff, one must have a legally cognizable interest in a matter and that interest must continue throughout the controversy. *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998); *Muhammad v. City of New York Dep't of Corrections*, 126 F.3d 119, 123 (2d Cir.1997); 19 James Wm. Moore et al., *Moore's Federal Practice* § 205.02[3][a] (3rd ed. 1998). Boeckle, Kiely, Marinaccio, McMahon and Zupan are all in the same position in which they would have been regardless of S & T's technical status, and have lost no rights of portability. Their claims are therefore dismissed. Plaintiffs Stewart, Mazur and Christie remain, and it is their claims that I examine in the rest of this decision.[4]

## II. *PLAINTIFFS' PORTABILITY ACT CLAIMS:*

### *CLAIMS FOR RELIEF ONE THROUGH FOUR*

Under *United States v. AT & T*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom., Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) (hereafter, "the *AT & T* decision"), AT & T was to divest its local telephone operations into seven Regional Bell operating companies and divest certain other companies and assets, effective on and promptly after December 31, 1983. The *AT & T* decision, and agreements thereunder among the affected Bell companies, provided a one-year window during which employees could be transferred among the former Bell companies without affecting their accumulated pension and health and welfare benefits, that is, their portability rights.

The Portability Act extended that window indefinitely for employees covered under the Act who were transferred after 1984, subject to the limitations provided by the Act. Section 559(a) provides for such

continuing Portability of "covered employee[s]":

(a) Employee Protection.—Notwithstanding any provisions of the Divestiture Interchange Agreement [DIA] to the contrary, in the case of any change in employment on or after January 1, 1985, by a covered employee, the recognition of service credit, and enforcement of such recognition, shall be governed in the same manner and to the same extent as provided under the [DIA] for a change in employment by a covered employee during calendar year 1984.

Portability Act, 98–369, § 559(a) (1984). A "covered" employee was defined as an employee who–

(A) on December 31, 1983, was an employee of any such entity serving in an eligible position, or

(B) was a former employee with rehire or recall rights on such date and is rehired during the period of the employee's rehire or recall rights.

*Id.* at § 559(b)(1)-(3). Thus, the Portability Act protects employees who were in an eligible position, with an eligible company, at the time of the divestiture of AT & T, and who have continued working for a telecommunications portability company. The employees in "eligible position[s]" are those who were not supervisors or, if they were, did not have salaries exceeding $50,000 annually, as adjusted by changes in the consumer price index since December 31, 1983. Portability Act, § 559(c)(3).

The plaintiffs are "covered employees." The parties dispute whether S & T, Inc. should be considered an "entity subject to the modified final judgment," that is, an entity subject to the *AT & T* decision. The Portability Act defines such an entity as:

(A) any carrier divested as a result of the modified final judgment,

---

4. Thus, for the remainder of this Memorandum and Order, when I refer to the "plaintiffs," I will be referring solely to Mazur, Christie and Stewart.

(B) the corporation owning such carrier before divestiture,

(C) any other communications common carrier owned, in whole or in part, by such corporation on December 31, 1983, or

(D) any Interchange Company (as defined in the [DIA]) excluding any subsidiary of such company other than any such subsidiary-

(i) which was established as of December 31, 1983, and

(ii) which participates in a defined benefit pension plan maintained by such interchange company.

*Id.* at § 559(c)(5)(A)-(D).

NYNEX is a carrier that was divested as a result of the *AT & T* decision, and thus, without question, the employees of its S & T Division were "covered employees" within the meaning of the Act. Defendants argue, however, that S & T, Inc., upon being incorporated, gained a corporate personality separate from NYNEX. S & T, Inc. was not an alter-ego of NYNEX, as plaintiffs argue, because S & T, Inc. was adequately capitalized, maintained separate bank accounts, maintained separate books and records, was responsible for its own funds, hired its own employees, paid taxes separately and managed its day-to-day operations through its own officers and directors.

Defendants argue, further, that S & T, Inc., as a "subsidiary" of an "Interchange Company," that is, as a subsidiary of NYNEX, under subsection "D", *supra,* was not necessarily bound by the Portability Act. This is because only a subsidiary which was both "established as of December 31, 1983" and "which participates" in the parent's defined benefit pension plan is

covered by the Act. Hence, portability for such companies is elective, not mandatory.

S & T, Inc. was incorporated in June 1991, and activated as of September 1, 1991, almost eight years after the December 31, 1983 effective date provided by section 559(c)(5)(D)(i). But it was not created out of whole cloth. To the executives, secretaries, supervisors and workers of S & T Inc., nothing changed. The change from division to corporation did not make a real difference in relation to the terms and conditions of the S & T employees or, at least, so they had a right to think. Nothing in the record suggests that the change in technical legal status of the employer affected, in the minds of employees, any term or condition of their employment. To those employees, S & T had replaced Bellcore, and these employees believed, or rightfully could believe, that they worked for NYNEX, and were continuing to work for NYNEX.

Congress intended by the Portability Act to protect covered employees beyond the changes compelled by divestiture – indeed, "permanently." The purpose of the enactment, as expressed by the Joint Committee that sponsored the Bill, was clearly stated, to

> permanently extend [ ], beyond 1984, the provisions of the [DIA] that govern the recognition of service credit and the enforcement of such recognition, in the case of any change in employment by a covered employee on or after January 1, 1985. For such an employee, there would be no time limitation on the portability of service credit granted under the [DIA].

Staff of Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984,* at 897 (Comm. Print 1984) (*"General Explanation"*).[5] Furthermore,

---

**5.** The DIA defines an Interchange Company as

> a company (including AT & T, *any Former Affiliate,* Cincinnati Bell Inc. and the Southern New England Telephone Company) which is a party to this Agreement [the

Divestiture Interchange Agreement, or DIA] and any subsidiary of such company which participates in a defined benefit pension plan maintained by such company or with respect to which such company has an in-

the "Act empowered Interchange Companies to extend portability to employees of uncovered subsidiaries, under a collective bargaining agreement or by any other means." *Id.* at 899.

The issue at hand is whether a communications common carrier and Interchange Company such as NYNEX may, simply by the act of converting an operating division into a subsidiary, drastically affect the Portability rights of its employees, to their prejudice and without giving them notice and opportunity to react.

■ The NYNEX defendants argue that the incorporation of S & T, Inc. in 1991 freed it of the Portability Act, for S & T, Inc. was not a subsidiary "which was established as of December 31, 1983." *See* Portability Act, § 559(c)(5)(D)(i), *supra.* But this literalism perverts the protection intended by the Act. A moment before incorporation, the non-supervisory employees of S & T Division were "covered employees," for they were employees of NYNEX, and NYNEX was, and remains, a company subject to the Act, whose employees had the right, as long as they remained NYNEX employees, to "permanently extend[ed]" portability. [*id*]. The act of incorporation may affect rights and expectations of parties who have knowledge of and deal with the corporate entity; the act of incorporation cannot, by alchemic transformation, subvert the rights of "covered employees" who were not given reasonably adequate notice or opportunity to react and protect themselves from ma-

terial adverse change to terms and conditions of employment guaranteed by Act of Congress. A literal uncontextual focus on a single phrase of a statute cannot pervert the central purpose of the statute. *See, Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring), ("We are confronted here with a statute which, if interpreted literally, produces an absurd ... result ... I think it entirely appropriate to consult all public materials, including the background of Rule 609(a)(1) and the legislative history of its adoption to verify that what seems to us an unthinkable disposition was indeed unthought of ... "). As Judge Learned Hand stated in *Federal Deposit Ins. Corp. v. Tremaine,* 133 F.2d 827, 830 (2d Cir.1943),

> There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.

Hand's words ring as true today as when he wrote.

My ruling does not mean that portability must inevitably attach to subsidiaries acquired by NYNEX, or to employees of NYNEX hired by such subsidiaries. My ruling is intended only to protect "covered employees" of NYNEX's S & T Division from losing material rights of portability merely because NYNEX changed its Division into a subsidiary.[6]

---

terchange agreement comparable to this Agreement;

(DIA, § 1.17) (emphasis added). The DIA defines "any Former Affiliate" to include NYNEX, the six other Regional Bell Operating Companies and

> any subsidiary of any such company (at any time whether before or after January 1, 1984). (DIA, § 1.15)

**6.** As the text states, I hold that NYNEX breached its obligations under the Portability Act by changing the technical legal status of the employing entity, thereby purporting to transform a "covered" employee—one entitled to the protection of the act—into an "un-

covered" employee. That NYNEX did it without notice and without giving employees and their bargaining representatives an opportunity to react, exacerbates the wrong. I do not reach various other issues: whether NYNEX would have been in breach if it had given reasonable advance notice and opportunity for "covered" employees to transfer, or refuse to transfer, employment, or gain a compensating remedy; whether NYNEX would have been in breach if it had dissolved its S & T Division and contracted out its R & D requirements to an independent company; etc.

Accordingly, I hold that NYNEX' incorporation of its S & T Division did not affect the portability rights of plaintiffs Stewart, Mazur and Christie, and that they are entitled to prove that their portability rights should be restored, or recover in damages.

Plaintiffs' Second, Third and Fourth claims, which seek enforcement of the Portability Act under common law doctrines of misrepresentation, equitable estoppel and unjust enrichment, seek essentially the same relief, and are dismissed as moot.

## III. PLAINTIFFS' ERISA CLAIMS: CLAIMS FOR RELIEF SIX THROUGH ELEVEN

### A. Exhaustion

Defendants contend that plaintiffs' ERISA claims, Claims Six through Eleven, should be dismissed for plaintiffs' failure to exhaust their administrative remedies. I disagree.

■ The purposes of the exhaustion requirement are to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard and not de novo." *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2d Cir.1993); *Ehrlich v. NYNEX Corp.,* 949 F.Supp. 213, 216–17 (S.D.N.Y.1996). Plaintiffs, however, are not required to exhaust if they can made a "clear and positive" showing of futility, for then the "purposes behind the requirement of exhaustion are no longer served." *Kennedy,* 989 F.2d at 594–95.

■ The record is clear that plaintiff Mazur exhausted the administrative remedies available under the Plan. (Plaintiffs' 56.1, at ¶ 24, NYNEX 56.1, at ¶ 24). Where "there has been, in some form, an unambiguous application for benefits and a formal or informal administrative decision denying benefits and it is clear that seeking further administrative review of the decision would be futile," a court action is then considered appropriate. *Barnett v. International Business Machines, Corp.,* 885 F.Supp. 581, 588 (S.D.N.Y.1995).[7]

Plaintiffs Stewart and Christie, unlike plaintiff Mazur, did not proceed administratively. But the issue they confronted was an issue of statutory interpretation, not of administrative discretion, and there is nothing in the papers indicating that they would have met with any greater success than Mazur. I hold that the futility exception gives each of the three plaintiffs proper standing to file this suit.

### B. Plaintiffs' Sixth, Seventh and Eighth Claims for Relief: Breach of Fiduciary Duty

Plaintiffs allege in their Sixth Claim for Relief that the trustees and fiduciaries of the NYNEX Management Pension Plan "acquiesced and accepted" NYNEX Corp.'s decision to designate S & T, Inc. a non-portability company without conducting their own "independent examination" to determine whether such a decision violated the Portability Act and ERISA, and thus violated their fiduciary duties to plaintiffs. (Am.Compl. at ¶ 309). Plaintiffs' Seventh and Eighth Claims for Relief allege that defendants failed to provide accurate information and notice to Plan participants that NYNEX, the Plan Sponsor, was modifying the Plan covering S &

---

**7.** Mazur elected to take a lump sum payment equivalent to the discounted actuarial value of his pension. Mazur so elected because he had been advised that S & T, Inc. was not a portabile company, and his new employer, Cincinnati Bell, considered him a new hire and did not recognize the portability of his accrued service time. (Plaintiffs' 56.1, at 24b). Hence, this court action was his appropriate recourse. The lump-sum payment that he received will be a credit against any recovery, and not a waiver of his claims to a recovery.

T Division employees to deprive them of portability upon S & T, Inc. becoming their employer. (Am.Compl.¶ 316). I grant defendants' motion to dismiss the Sixth Claim for Relief, and I hold that the Seventh and Eighth Claims raise triable issues against defendant NYNEX, but not against the plan fiduciaries.[8] I therefore deny in part, and grant in part, defendants' motion relating to the Seventh and Eighth Claims.

 i. Plaintiffs' Sixth Claim for Relief Alleging Breach of Fiduciary Duty should be Dismissed

 Generally, the sponsor of an ERISA Plan, and not the fiduciaries who manage and administer the Plan, decides on the extent and scope of coverage that the Plan will have, initially and as amended. The decision whether or not to designate a company as a portability company is a function of the plan sponsor and not of the plan fiduciaries. *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (employers or other plan sponsors do not act in a fiduciary capacity when adopting, modifying or amending ERISA welfare plans); *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); (same, ERISA pension plan); *Siskind v. Sperry Retirement Program,* 47 F.3d 498, 505 (2d Cir.1995) ("employer that designs retirement plan or amends an existing plan's design does not come within ERISA's definition of a fiduciary") (*"Siskind"*). An employer will be deemed to be a fiduciary only when "fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration." *Siskind,* 47 F.3d at 505.

Pursuant to ERISA, a fiduciary is defined as a person who exercises discretionary control or authority respecting a plan or the management or disposition of assets of a plan, or gives investment advice with respect to such assets:

 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A)(1999); *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 21 (2d Cir.1996). Thus, the statute defines a fiduciary functionally, and not according to specific titles. *Lopresti v. Terwilliger,* 126 F.3d 34, 40 (2d. Cir.1997).

NYNEX's decision not to designate S & T, Inc. a portability company did not involve an act of administration or interpretation of the terms of the NYNEX Management Plan. NYNEX made its determination on the basis of its interpretation of a federal statute and not on any terms of the NYNEX Management Pension Plan. Since the NYNEX defendants did not perform any fiduciary functions with respect to such decision and did not have an independent duty to conduct a legal review of NYNEX' interpretation of the Portability Act, I grant defendants' motion to dismiss plaintiffs' Sixth Claim for Relief.

 ii. Plaintiffs' Seventh and Eighth Claims for Relief, Alleging Breach of Duty to Notify of Material Changes to a Plan, Raise Triable Issues

 The Plan Administrator is required to inform each participant of a benefits

---

**8.** Plaintiffs' Amended Complaint alleged claims also against "John Does 1–15," "Jane Roes 1–35," "ABC Corporations 1–25," and "XYZ Corporations 1–10." During oral argument, plaintiffs voluntarily dismissed all these unknown defendants and, as well, their claims against Robert K. Donovan. (Tr. p. 8).

plan of his rights and obligations under the plan, "in a manner calculated to be understood by the average plan participant," and in a "sufficiently accurate and comprehensive manner." If a plan is materially modified, the plan participants are to be informed "in a manner calculated to be understood by the average plan participant." *See,* ERISA, 29 U.S.C. §§ 1021(a), 1022(a),[9] 1024(b).[10] Plaintiffs allege that defendants violated these requirements by failing properly and adequately to give timely notice to plaintiffs that the conversion of S & T from division to corporation would terminate the portability rights of S & T's employees. (Am.Compl., at ¶¶ 326–335). The issue raised by plaintiffs is to be determined by reviewing the Summary Plan Description, IT'S YOUR CALL, distributed by the NYNEX defendants to plan participants in May 1991. (Defts' App., Vol. 2, Ex. 7).

IT'S YOUR CALL summarized ERISA benefits as of May, 1991 for employees of Participating Companies, including NYNEX. Plaintiffs were then employees of NYNEX, for S & T at the time was one of its Divisions; S & T, Inc., was not incorporated until June, 1991, a month later, and did not begin to operate until September, 1991, four months later. (Plaintiffs' 56.1, at ¶ 18b). The Summary Plan Booklet described benefits for employees and advised them, regarding the

retention and loss of portability, that if they resigned from a Participating Company and "are hired within 30 days by a portability company, and if you qualify as portable, you'll receive the full value of your plan account," that is, full portability. (*Id.,* at p. 17) Plaintiffs, of course, did not resign from S & T; from their perspective, they continued to be employed by S & T even while, four months later, their employer, S & T Division, became S & T, Inc. No other statements in the booklet seemed to cover this kind of change in the legal personality of their employer, and nothing in the booklet advised the S & T employees of any changed circumstance with respect to their portability.

A word of background is useful. After divestiture, NYNEX and six other Regional Bell Operating Companies participated in the ownership of a common research and development company, Bell Communications Research, Inc., or "Bellcore". Bellcore, as a Bell Participating Company, provided portability to its employees, many of whom rotated between NYNEX and Bellcore. (*Id.,* Ex. 7 at pp. 19–20.) In 1986, when NYNEX organized S & T as its own division to perform for NYNEX the functions previously performed by Bellcore, S & T employees continued to enjoy portability. Employees were advised, however, that if they transferred to Bellcore "on a career basis," they will be

---

9. Section 102(a) provides in pertinent part:

(a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title.
29 U.S.C. § 1022(a).

10. Section 104(b), states in pertinent part:

(b) Publication of summary plan description and annual report to participants and beneficiaries of plan.
Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifica-

tions and changes referred to in section 1022(a)(1) of this title-
(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
(B) if later, within 120 days after the plan becomes subject to this part.
The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply . . . .
29 U.S.C. § 1024(b).

considered to have resigned from NYNEX, "[and][y]ou will not be able to transfer your NYNEX [benefits] to [Bellcore]." (*Id.* at 20).

When, in September 1991, NYNEX transferred employees of its S & T Division to S & T, Inc., those employees could rightfully consider that their portability continued. The Summary Plan Booklet gave no advice with regard to transfers from S & T Division to S & T, Inc. Indeed, the S & T employees remained in place, performing the same job functions as they had been performing.

Management employees of NYNEX were given another booklet, describing the NYNEX Management Pension Plan, also as of May, 1991. The Plan described NYNEX as an "Interchange Company", defining it as a "company with which NYNEX has an agreement to recognize service credit for eligible transferred employees and to exchange assets between the pension plans sponsored by NYNEX and by the Interchange Companies for such transferred employees." (*Id.*, Plan at 3). Appendix B of the Plan dealt with the Divestiture Interchange Agreement, and Appendix C of the Plan dealt with the Mandatory Portability Agreement among the Interchange Companies.

Appendix B advised employees of their portability rights with respect to job transfers during 1984, and warned them that, except for limited situations (not applicable to this case), "if you become employed by one of the [Interchange] companies and their subsidiaries, you will not be covered by an Interchange Agreement and your previous [benefits] will not be credited by your new employing company *unless you are going to [Bellcore] or are covered by the Portability Act.*" (*Id.*, Plan at 25), (emphasis added). Appendix C advised employees that NYNEX had signed a Mandatory Portability Agreement under the Portability Act "with the companies and their subsidiaries listed in this Appendix C" to "recognize the employees' prior net credited service [benefits]". NYNEX was one of the listed companies, and that, of course, included its employees who were employed in NYNEX's S & T Division. S & T, Inc., which was not yet in existence, was not listed.

Appendix C defined who was a "covered management employee" in relation to portability, generally, someone who was employed by a portability company as of December 31, 1983 with a base salary then of $50,000 or less, adjusted by cost of living increases. The plaintiffs satisfied this definition, for they had been employed by NYNEX as of December 31, 1983 and were thereafter employed by NYNEX (or NYNEX's S & T Division) or Bellcore, also a portability company. The Plan did not contain any advice or warning of what might happen if NYNEX converted its Division into a separate corporation. Both NYNEX and Bellcore were listed as portability companies. (*Id.*, App. C, at 28). S & T, Inc. was not listed, for it was not then in existence.

Plaintiffs testified of numerous inquiries to NYNEX's human resources personnel regarding portability, with no advice that their portability rights were in any jeopardy. Pasquale Miele, director of Human Resources for S & T, Inc., assured Mazur that he would retain his portability rights while at S & T, Inc. (Plaintiffs' 56.1, at ¶ 24g). Casimir Skrzypczak, President of S & T, Inc., assured each employee, in a company wide meeting, that "none of our benefits or rights would change" upon the incorporation of S & T, Inc. (Plaintiffs' 56.1, at ¶¶ 24h–24i). Allen Buzzard, Director of NYNEX Corp. Human Resources, told Christie that S & T, Inc. was a portability company. (Plaintiffs' 56.1 at ¶ 25). Stewart testified that Maureen Govern told him, in recruiting him to join S & T, Inc., that S & T, Inc. was a portability company, and that it was not until May 1996, three years after he joined the company, that he was notified by S & T, Inc. that it was not a portability company.

Under ERISA, the Plan Administrator, here, NYNEX Corporation,[11] is obligated to make disclosure of modifications to the employee benefit plan. 29 U.S.C. §§ 1021–1024. *See e.g., Pineiro v. Pension Benefit Guaranty Corp.*, No. 96 Civ. 7392, 1997 WL 739581, at *14 (S.D.N.Y. Nov. 26, 1997). Disclosure, the Supreme Court ruled, was a fundamental objective of Congress "because Congress found it desirable that 'disclosure be made and safeguards provided with respect to the establishment, operation, and administration of [employee benefit] plans.'" *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) *quoting* 29 U.S.C. § 1001(a); 120 Cong. Rec. 29197 (1974). NYNEX has failed to support defendants' motion to dismiss by any credible evidence that timely and accurate notice to Plan Participants, including plaintiffs, that their rights were about to be materially and adversely affected, was given. *It's Your Call* is not the clear advice, capable of "being understood by the average Plan Participants," that Plan Participants are entitled to have. I therefore deny defendant NYNEX' motion to dismiss the Seventh and Eighth Claims for Relief. Plaintiffs are entitled to show the extent to which they lost benefits, that is, suffered damage, by not being advised of their loss of portability, from September 1, 1991 to such date as they knew or reasonably should have known that S & T, Inc. was not a portability company.[12]

D. *Plaintiffs' Ninth Claim for Relief Alleging Unlawful Discrimination should be Dismissed*

██ Plaintiffs' Ninth Claim for Relief alleges that "defendants' failure to desig-

nate S & T, Inc. as a portability company interfered with and discriminated against the employees of NYNEX' S & T Division by failing to provide them with full employment service credits for the time which such employees have spent working for the subsidiary." (Am. Comp. at ¶ 339). The violation, plaintiffs claim, was of section 510 of ERISA, 29 U.S.C. § 1140.

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. . . .

Section 510 was designed primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. The Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d. Cir.1988). There is nothing in the record to suggest that the purpose of the NYNEX defendants was to discriminate or interfere with the attainment of any right of a Plan Participant. NYNEX pursued business purposes in incorporating S & T. The incorporation of S & T, Inc. was not a pretext for punishment or interference with the rights of employees. I grant defendants' motion to dismiss plaintiffs' Ninth Claim for Relief.

---

11. See Pl.Ex. G, copy of IRS/Labor Form 5500 dated October 16, 1995, without accompanying schedules.

12. Although the NYNEX defendants do not distinguish among themselves with regard to their relative exposure to liability, it appears that NYNEX, and not the trustees, should be the defendant responsible to plaintiffs on plaintiffs' Seventh and Eighth Claims. Ac-

cordingly, I grant defendants' motion to dismiss the defendants-fiduciaries.

I observe, as well, that a showing by plaintiffs on their ERISA claims will duplicate their claim *against* NYNEX under the Portability Act, alleged in plaintiffs' First Claim for Relief. The parties should consider an election at an appropriate time.

### E. The NYNEX Defendants are Entitled to Summary Judgment With Respect to Plaintiffs' Tenth Claim for Relief

Plaintiffs' Tenth Claim for Relief alleges that the NYNEX defendants' failure to provide pension and welfare credits to which the plaintiffs' are entitled constitutes misconduct violative of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Am.Compl. at ¶ 346). This claim adds nothing to that which has previously been alleged. Any entitlement to relief under § 502(a)(1)(B) must be found only "under the terms of the plan," *see,* 29 U.S.C. § 1132(a)(1)(B). Since the Plans do not list S & T, Inc. as a portability company, and nothing in ERISA requires NYNEX, the Plan Sponsor, so to list it, no relief can be granted to the plaintiffs. For the reasons given in dismissing the Sixth Claim for Relief, the Tenth Claim for Relief is also dismissed.

### CONCLUSION

For the reasons stated, I order as follows:

1. The claims of plaintiffs Anthony Marinaccio, Patrick McMahon, Noreen Kiely, Robert Boeckle, Edward Zupan are dismissed against all defendants.

2. The complaint of plaintiffs Randall Stewart, John Mazur and Oral Christie is sustained, and the motion of defendants to dismiss their claims is denied, to the following extent:

(a) on the first claim for relief, against only defendant NYNEX Corporation;

(b) on the Seventh and Eighth Claims for relief, against only defendant NYNEX Corporation.

(c) the complaint of plaintiffs Randall Stewart, John Mazur and Oral Christie is dismissed, and the motion of defendants is granted, on all other claims of relief against all other defendants.[13]

### ORDER ON RECONSIDERATION

Defendant NYNEX Corporation moves for reconsideration of my decision of November 23, 1999. Alternatively, it asks me to grant it leave to move for an interlocutory appeal. 28 U.S.C. § 1292(b). I deny its motion.

I held in my November 23 decision that NYNEX, a "covered" company within the meaning of the Portability Act, Deficit Reduction Act of 1984, P.L. 98–369, § 559, cannot defease its employees' rights under the Act, and eliminate its obligations to them, simply by incorporating the division of NYNEX where they worked and transferring them to that newly incorporated entity. I also held that NYNEX could not do so without advising affected employees and thus giving them the opportunity to react and pursue such alternative remedies and employments as might be available, and that NYNEX' failure so to advise, violated its obligations under ERISA, 29 U.S.C. §§ 1021–1024.

NYNEX complains that I stretched the meaning of the Portability Act and, without setting out any new facts or arguments, asks me to reconsider my decision. NYNEX' arguments are without merit. Clearly, NYNEX was a "covered" company and, clearly, the three plaintiffs who survived the motions were "covered" employees, entitled to protection under the Act. It was NYNEX which sought to defease their rights, and it is NYNEX that must stand judgment for setting up a new employing entity, indistinguishable in name from the entity of their continuing employment, without advising the employees. Thus, NYNEX violated the Portability Act, and it does not require a tortured or "expansionist" reading of the Act to arrive at that plain conclusion. That the act of violation may have been done thoughtlessly by the neglect of a NYNEX staff attorney to label S&T, Inc. a "portability company" is not an excuse. Indiffer-

---

13. The NYNEX defendants did not move for summary judgment with respect to plaintiffs' Eleventh Claim for Relief seeking attorneys' fees, and that claim also remains.

ence to legal consequences is neither a legal, nor a moral, virtue.

NYNEX complains also that its obligations as Plan Administrator did not involve an obligation to advise the Plan Participants—its employees—that it was affecting a change that would defease important seniority rights to their pension and welfare benefits. NYNEX states that only a few employees are affected— only those who left, or who may leave, NYNEX to another company covered by the Portability Act. (NYNEX does not explain why only a few of its employees are or may be affected—there is no support for that proposition in the record— and, in any event, the proposition is not relevant.)

Again, NYNEX' argument is without merit. Sections 102–105 of ERISA, 29 U.S.C. §§ 1021–1025, impose reporting duties on Plan Administrators. Where one party has exclusive knowledge of conditions capable of affecting important economic rights of others and has the duty to report to such others, and where such others depend on the former to advise them of changing conditions that affect their rights, a relationship of fiduciary is created with respect to such reporting duties. *Blue Cross of Calif. v. SmithKline Beecham Clinical Labs., Inc.*, 62 F.Supp.2d 544, 555 n. 7 (D.Conn.1998). And "since a plan administrator is clearly a fiduciary within the meaning of ERISA," the plaintiff properly "brought an action under § 1132(a)(3)." *Id.* A fiduciary must look out for those who rely on him. *See e.g., Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545 (1928) ("Many Forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."). There is a purpose to reporting—to advise those affected by changes in a Plan of those changes, in order that they can seek alternatives and pursue remedies. If events require prompt notice, the Plan Administrator is required to give prompt notice.

I also reject Defendant's argument that damages should be limited to equitable relief. Plaintiffs' Eighth Claim for Relief alleges that defendants breached their obligations to provide notice to participants of modifications of coverage affecting their rights and benefits. Both equitable remedies available under § 503(a), 29 U.S.C. § 1132(a), and monetary remedies available under § 503(c), 29 U.S.C. § 1332(C), are available to aggrieved plaintiffs. *See Harless v. Research Inst. of America*, 1 F.Supp.2d 235, 240 (S.D.N.Y.1998); *Rosenthal v. New York Water Serv. Corp.*, No. 82 Civ. 1778, 1984 WL 1014 at *2 (S.D.N.Y. Oct. 12, 1984) (Section 1132(c) permits award of damages for breach of §§ 1021–1025).

I also deny Defendant's motion for certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This litigation, pending since 1996, must move to an early, and final, termination of all pending issues. An interlocutory appeal will frustrate the speedy proceeding of this case to such an early, final resolution and will not "materially advance the ultimate termination of litigation." *Id.*

SO ORDERED.